United States Magistrate Court
DSQ-SDTX
FILED

APR 28 2025   2B

Nathan Ochsner, Clerk
Laredo Division

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL NO. 5:25-CR-349-2 |
| § | |
| RAYMOND BERRONES II § | |

## PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas, and the undersigned Leslie Ann Cortez, Assistant United States Attorney, and the defendant, **RAYMOND BERRONES II** ("Defendant"), and Defendant's counsel, pursuant to **Rule 11(c)(1)(A)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to **COUNT ONE** of the indictment. Count 1 charges Defendant with **trafficking of firearms**, in violation of Title 18, United States Code, Section 933(a)(3) & (b). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment/information, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 933(a)(3) & (b), is imprisonment of not more than **15 years** and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than **3 years**. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he/she should violate the conditions of any period

of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than **2 years**, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

Pursuant to Title 18, United States Code, Section 3014(a)(5), immediately after sentencing, and in addition to the mandatory special assessment identified above, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5,000.00) per count of conviction, if non-indigent as determined by the court. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status. Defendant understands that if he/she is not a citizen of the United

States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

### Waiver of Appeal, Collateral Review, and Statute of Limitations

5. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement

(including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9. The United States agrees to each of the following:

(a)   If Defendant pleads guilty to Count 1 of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United

4

States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he/she is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

10. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment/information. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

5

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may

6

be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

### Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count I of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On February 4, 2025, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) received a call from a source of information (SOI) that Christian Lee Patino (PATINO) had attempted to purchase a firearm from a local Federal Firearms Licensee (FFL) dealer, namely, L Buffalo Pawn in Laredo, Texas.

At approximately 11:58 a.m. PATINO and the driver of a red Honda Civic entered the parking lot of the store and PATINO exited the vehicle and entered the store. The SOI reported the incident to ATF after discovering PATINO was accompanied by an unidentified male driving the red Honda Civic. The SOI stated the unidentified male remained in the vehicle while PATINO entered and exited the store on at least two occasions prior to their arrival at 11:58 a.m.

7

At approximately 12:00 p.m., PATINO filled out the ATF Form 4473 and paid $550.00 in cash. After PATINO received his change and receipts, he made his way to the gun display case where he selected another rifle identified as a DPMS Panther Arms, A-15, bearing serial number FFH280599. PATINO filled out the ATF Form 4473 for the second rifle at approximately 12:20 p.m and proceeded to pay $500.00 in cash.

At approximately 12:32 p.m., PATINO exited the store and entered the red Honda Civic. The vehicle then departed the parking lot. At approximately 12:40 p.m., the red Honda Civic pulled back into the parking lot and PATINO entered the store. At approximately 12:42 p.m., PATINO received the two firearms and returned to the red Honda Civic. Before entering the vehicle, PATINO placed the firearms in the rear passenger area of the vehicle. The vehicle departed the area and was seen by surveillance units driving west on Clark Boulevard.

Officer Norma Dominguez with the Laredo Police Department (LPD) witnessed the driver of the red Honda Civic commit a traffic violation by not signaling the required distance before turning. As Officer Dominguez witnessed the violation, the driver of the red Honda Civic immediately pulled into what appeared to be a small residential apartment complex located on Iturbide Street, in Laredo, Texas. Officer Dominguez quickly initiated her emergency equipment to conduct a traffic stop on the red Honda Civic at approximately 1:03 p.m.

Officer Dominguez approached the driver of the red Honda Civic who was identified as Raymond BERRONES. BERRONES stated he and PATINO were at Bufalo Pawn and that PATINO purchased two rifles. Officer Dominguez asked BERRONES if the two firearms were in the vehicle and BERRONES stated they were. BERRONES was asked if the firearms were stolen and he stated, "No, they're not stolen, we just... umm, he just bought them right now."

8

A third individual was discovered sitting in the rear passenger seat. The third individual was identified as Dante Junius VELA (VELA). TFA Rodriguez asked BERRONES for consent to search the vehicle and BERRONES agreed. TFA Rodriguez searched the rear passenger compartment of the vehicle and discovered a duffel bag placed on the rear passenger seat which was immediately next to where VELA was sitting inside of the vehicle. TFA Rodriguez asked BERRONES if he could search the duffel bag and BERRONES granted consent. TFA Rodriguez discovered two AR-type rifles wrapped in a blanket inside of the duffel bag. The rifles were identified as a DPMS Panther Arms, Model A-15, multi-caliber, rifle, bearing serial number FFH280599, and a DPMS Panther Arms, Model A-15, multi-caliber, rifle, bearing serial number DKF400027. Both rifles had an El Bufalo Pawn price tag attached and a thirty (30) round capacity magazine.

After rights advisement and waiver, PATINO stated he was asked by an identified co-conspirator to purchase the firearms because that individual could not purchase them himself because he has a record. PATINO stated he was going to pay the passenger sitting in the rear seat $40.00 USD. The passenger sitting in the rear seat of the red Honda Civic was identified as Dante Junius VELA. PATINO stated the $40.00 payment was for "backup" while he delivered the firearms. PATINO stated he was responsible for everything.

After rights advisement and waiver, BERRONES stated he knows that his friend, Christian PATINO commonly straw purchases and sells firearm into an illegal market. On this date, PATINO hired BERRONES to drive him so PATINO could purchase firearms and deliver them to a subject named "Jorge". BERRONES overheard PATINO talking to "Jorge" on his cell phone and told him to purchase two firearms, specifically "long ones." Prior to the firearms purchase,

9

BERRONES was at PATINO's residence to give him a ride when Dante VELA arrived on a bicycle and provided PATINO with approximately $1,000 cash to purchase the firearms. Before meeting VELA, BERRONES drove PATINO to three different gun stores to shop for prices, went back for the money, and finally went to Buffalo Pawn to purchase the firearms. Following the purchase of the firearms, BERRONES drove PATINO to a neighborhood, where they picked up VELA, who was supposed to take them to give the firearms to the actual purchaser, "Jorge", who lives at the residence where the traffic stop occurred. BERRONES overheard the phone conversation where PATINO agreed to straw purchase the firearms and was paid $250 profit to complete the straw purchase. BERRONES knows PATINO straw purchases firearms and hangs out with "shady people" and that the firearms get smuggled to Nuevo Laredo, Mexico.

After rights advisement and waiver, VELA admitted he is a convicted felon and prohibited from possessing or purchasing firearms. On this date VELA got into the back seat of the car being driven by BERRONES and occupied by his friend PATINO. VELA got into the backseat of the car and knew the guns were there, because he had to physically move them to make room to sit.

ATF SA Priscilla Almaraz determined both firearms that were recovered are firearms as defined in 18 U.S.C. § 921(a)(3) and both traveled in/affected interstate or foreign commerce as they were both manufactured in the state of Alabama.

### Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial

information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

16. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

17. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

## Forfeiture

18. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation;

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

## Financial Statement

19. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

20. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

21. This written plea agreement, consisting of 13 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all

parties. Defendant acknowledges that no threats have been made against him/her and that he is pleading guilty freely and voluntarily because he is guilty.

25. Any modification of this plea agreement must be in writing and signed by all parties.

*[signature]*
**RAYMOND BERRONES II**
Defendant

APPROVED:

NICHOLAS J. GANJEI
United States Attorney

By: *[signature]* Leslie A. Cortez

Leslie Ann Cortez
Assistant United States Attorney
Southern District of Texas

*[signature]* Emilio Davila Jr.

**Emilio Davila Jr.**
Attorney for Defendant

13